IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

DAVID T. TERRELL, SR.,           )
                                 )
        Plaintiff,               )
                                 )
    v.                           )    CV 310-100
                                 )
LORI SUMNER, LPN,[1]             )
                                 )
        Defendant.               )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Johnson State Prison ("JSP") in Wrightsville, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). This case is now before the Court on Defendant's "Motion to Dismiss" (doc. no. 16) and Plaintiff's "Motion for Leave To File an Amended Complaint" (doc. no. 13). Plaintiff opposes Defendant's motion, and while Defendant has not filed a separate response to Plaintiff's motion to amend, she addresses that motion in the brief in support of her motion to dismiss, as discussed below. (See doc. nos. 16-1, 19, 21.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** and that Plaintiff's

---

[1]Plaintiff's motion to amend and Defendant's motion to dismiss clarify that Defendant's name is "Lori Sumner" rather than "Summers," as Plaintiff indicated in his original complaint. (See doc. nos 13, 21.) The **CLERK** is **DIRECTED** to modify the docket accordingly.

motion to amend be **DENIED**. The Court further **RECOMMENDS** that this case be **DISMISSED** without prejudice and **CLOSED**.

I. **BACKGROUND**

Plaintiff alleges in his original complaint that on November 18, 2009, he complained to Defendant, a nurse at JSP, about chest pain and coughing. (Id. at 6.) According to Plaintiff, Defendant diagnosed him with a common cold and gave him a bottle of Robitussin, but did not check his chest or lungs. (Id.) Plaintiff further alleges that he reported to sick call with the same problems on November 28, 2009, and that Defendant gave him the same diagnosis and treatment. (Id.) Plaintiff states that on December 15, 2009, he again requested to be seen for his chest pain and coughing, following which he was scheduled for an appointment with a physician on January 7, 2010. (Id.)

Following his January 7th appointment, Plaintiff avers that he was taken to Augusta State Medical Prison and put in isolation for roughly a month, during which time tests were performed on his chest and lungs. (Id. at 7.) While Plaintiff does not report the specific results of those tests, he alleges that he has suffered injuries to his heart and lungs as a result of Defendant's inadequate medical treatment. (Id.)

Because Plaintiff is proceeding IFP, the Court screened his complaint pursuant to 28 U.S.C. §§ 1915(e) & 1915A. The Court allowed Plaintiff to proceed with a § 1983 claim against Defendant for deliberate indifference to his health in violation of the Eighth

Amendment.[2] (Doc. no. 9.) In allowing Plaintiff to proceed with this claim, the Court noted that Plaintiff's complaint indicated he had not filed grievances as to his claims concerning his medical care, suggesting he may not have satisfied the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); however, because Plaintiff alleged that he was unable to file a grievance regarding his medical issues, the Court refrained from making definitive findings as to whether his deliberate indifference claim should be dismissed without prejudice for failure to exhaust his administrative remedies. (Doc. no. 9, p. 2 n.2.)

Thereafter, the parties filed the instant motions, the substance of which are addressed below.

## II. DISCUSSION

### A. Defendant's Motion to Dismiss

Defendant argues in her motion to dismiss that Plaintiff's claim against her should be dismissed for failure to exhaust administrative remedies, failure to state a claim, and because she is entitled to qualified immunity.[3] (See generally doc. no. 16-1.) In his

---

[2]Upon screening Plaintiff's original complaint, the Court additionally recommended the dismissal of all other Defendants named in the complaint. The Honorable Dudley H. Bowen, Jr., United States District Judge, adopted that recommendation as the opinion of the District Court. (Doc. no. 10.)

[3]Defendant also argues in her motion to dismiss that the Eleventh Amendment bars any official capacity claim that Plaintiff may be trying to assert against her. (Doc. no. 16-1, pp. 8-10.) However, Defendant withdrew her Eleventh Amendment argument in her reply after Plaintiff clarified in his response that he only sought to assert a claim against her in her individual capacity. (Doc. no. 19, p. 1; doc. no. 21, p. 1.)

3

opposition to Defendant's motion, Plaintiff argues that his claim against Defendant should not be dismissed on exhaustion grounds because he could not file a grievance regarding Defendant's actions in light of the fact that she is employed by the Medical College of Georgia ("MCG") rather than the Georgia Department of Corrections ("GDOC"). (Doc. no. 19, p. 2.) Plaintiff also contends that the allegations in his original complaint state a viable Eighth Amendment claim and that Defendant should not be granted qualified immunity. (See id., pp. 2-5.) Defendant disputes each of these contentions in her reply. (See doc. no. 21.)

As explained below, the Court concludes that Defendant has the better argument on the issue of exhaustion; therefore, the Court finds that it is unnecessary to reach the other arguments in Defendant's motion to dismiss.

### 1. Legal Standard for Exhaustion of Administrative Remedies

Where a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, as Defendant has here, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.
>
> . . . .
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues. . . . The

4

> defendants bear the burden of proving that the plaintiff has failed to exhaust his administrative remedies. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings, the prisoner has exhausted his available administrative remedies.

Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 129 S. Ct. 733 (2008)). Where exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

### 2. Plaintiff's Failure to Exhaust Administrative Remedies

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998). Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005). If an administrative remedy is

5

"available," it must be exhausted to satisfy § 1997e(a). See Alexander, 159 F.3d at 1326 (explaining that under PLRA, courts are "to focus solely on whether an administrative remedy program is 'available'").

Furthermore, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159. Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 F. App'x 918, 920 (11th Cir. 2006) (*per curiam*) (quoting Johnson, 418 F.3d at 1155); see also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (*per curiam*) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies.").

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir.

6

2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

As Defendant correctly observes, the administrative grievance procedure applicable in this case is governed by the GDOC's Standard Operating Procedure ("SOP") IIB05-0001. (Doc. no. 16, Ex. 1, Attach. A.) Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. SOP IIB05-0001 § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. §§ VI(C)(2) & (D)(2). The SOP requires that an inmate be given a response to his informal grievance within ten calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has 30 calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the

7

formal grievance, he has five business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has 90 calendar days after receipt of the grievance appeal to respond. Id. §§ VI(D)(2) & (5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(D).

Here, Defendant has shown that Plaintiff's claim against her should be dismissed without prejudice because of his failure to satisfy the exhaustion requirement of § 1997(e). In support of her motion to dismiss, Defendant has produced the affidavit of Keith Morris, the Grievance Coordinator at JSP, as well as a record of Plaintiff's grievance history during his incarceration. (Doc. no. 16, Ex. 1 (hereinafter "Morris Aff.") & Attach. D.) These documents establish that Plaintiff filed two grievances while incarcerated, one in June of 2005, prior to his assignment to JSP, and one in August of 2007. (Id. ¶ 22 & Attach. D.) Neither of these grievances concerned Defendant or the allegations in Plaintiff's complaint, and "Plaintiff did not file a grievance regarding any alleged incident between November 18, 2009 and January 2010." (Id. ¶¶ 22-23 & Attach. D.)

As mentioned previously, Plaintiff does not dispute his failure to file a grievance regarding the allegations in his complaint; rather, he alleges that he could not file a grievance regarding Defendant's actions because she is employed by MCG rather than the GDOC. (Doc. no. 19, p. 2.) However, Defendant effectively rebuts this contention by showing that the grievance procedure at JSP allows prisoners to grieve "any condition, policy, procedure, action or lack thereof that affects inmates and is in the control of the [GDOC]." (Morris Aff.

8

¶ 7 (quoting SOP IIB05-0001 § VI.A.5).) The scope of issues that prisoners may grieve includes medical issues and only excludes matters over which the GDOC does not exercise control, such as parole decisions. (See id. ("Medical issues are grievable.").) Notably, Plaintiff fails to point to any exception for grieving medical issues based on the identity of the employer of the prison medical personnel whose conduct is at issue. Moreover, Plaintiff does not assert that he attempted to file a grievance and was prevented from doing so by prison officials. (See doc. no. 19.) Rather, it is apparent that Plaintiff neglected to file a grievance regarding the allegations in his complaint and now seeks for the Court to excuse his failure based solely on Plaintiff's own theory regarding his ability to file a grievance over the conduct of a prison medical provider employed by MCG. This the Court will not do. Defendant has shown that Plaintiff could have filed a grievance but failed to do so, thereby failing to avail himself of an available administrative process. See Johnson, 418 F.3d at 1155-56. Accordingly, Defendant's motion to dismiss should be **GRANTED**, and Plaintiff's claim against Defendant – which is the only claim with which he has been allowed to proceed in this case – should be dismissed without prejudice for failure to comply with the exhaustion requirement of §1997e(a).[4]

B.  **Plaintiff's Motion to Amend**

---

[4] In conjunction with her motion to dismiss Defendant filed a motion to stay, which asks the Court to stay discovery pending resolution of her motion to dismiss. (Doc. no. 17.) Notably, no scheduling notice has issued in this case to initiate discovery and set scheduling deadlines. Therefore, should the District Court adopt this Court's recommendation regarding the disposition of Defendant's motion to dismiss, the motion to stay should be **DEEMED MOOT**.

In his motion to amend, Plaintiff seeks permission to file an amended complaint that asserts allegations similar to the original complaint regarding Plaintiff's medical care at JSP and purports to name an a new party as a defendant, Nurse Wilkes. (Doc. no. 13.) The proposed amended complaint attributes certain conduct to Nurse Wilkes that was attributed to Defendant in the original complaint, such as the allegedly incorrect initial diagnosis of Plaintiff's lung condition as a common cold.[5] (See id.) In Defendant's brief in support of her motion to dismiss, she notes that the motion to dismiss has been filed solely on her own behalf because Nurse Wilkes has not been made a party to this case; however, Defendant asserts that the arguments set forth in the motion to dismiss – including Plaintiff's failure to exhaust administrative remedies – are equally applicable to Plaintiff's proposed claim against Nurse Wilkes. (See doc. no. 16-1, p. 3 & n.2.)

Federal Rule of Civil Procedure 15(a)(1) provides that:

> A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

If a party is not entitled to amend as a matter right under Rule 15(a)(1), then "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Notably, when a party files a motion to amend instead of amending as a matter of course, it is within a court's discretion to review the motion under the Rule

---

[5]Of note, Plaintiff's amended complaint sets forth no new allegations regarding Plaintiff's failure to file a grievance concerning his allegations against Defendant. (See doc. no. 13.)

15(a)(2) standard to determine whether the proposed amendment should be allowed. Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010). Here, although Plaintiff was entitled to amend as a matter of course at the time he filed his motion to amend, pursuant to Coventry First, LLC, the Court finds it appropriate to review the motion under the Rule 15(a)(2) standard.[6]

As a general rule, leave to amend under Rule 15(a) is given freely. Foman v. Davis, 371 U.S. 178, 182 (1962). That said, leave to amend is not guaranteed, and the decision of whether to grant a motion to amend is within the sound discretion of the trial court. Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. 1981).[7] "In making this determination, a court should consider whether there has been undue delay in

---

[6]The Court is aware that in Coventry First, LLC, the Eleventh Circuit distinguished a prior case, Brown v. Johnson, 387 F.3d 1344 (11th Cir. 2004), which reversed a district court's denial of a motion to amend where the movant filed a motion despite being entitled to amend as a matter of course. See 605 F.3d at 870 n.2. In distinguishing Brown, the court noted that the district court in that case had erroneously concluded that Rule 15 did not apply by reason of the PLRA; the court also noted that unlike in Coventry First, LLC, the movant in Brown was *pro se*.

In the instant case, the Court finds it appropriate to exercise its discretion to review Plaintiff's motion to amend notwithstanding his *pro se* status. Plaintiff has shown himself to be an adept *pro se* litigant, as he has consistently responded with particularity to the arguments in Defendant's filings. (See, e.g., doc. no. 19.) Moreover, were the Court to construe his motion to amend as an amendment as a matter or course, his amended complaint would be subject to screening pursuant to the IFP statute and would be subject to dismissal without prejudice on exhaustion grounds for the same reasons set forth below in the Court's futility analysis of the motion to amend. See 28 U.S.C. §§ 1915(e) & 1915A. In other words, nothing in Plaintiff's proposed amendment changes the fact that he has failed to exhaust any of the claims he has asserted or attempted to assert in this case.

[7]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment." Local 472, United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Ind. v. Georgia Power Co., 684 F.2d 721, 724 (11th Cir. 1982) (quoting Foman, 371 U.S. at 182). A motion to amend that seeks to add a claim against a new defendant is properly denied as futile when the proposed claim is without merit or cannot form the basis for cognizable relief. See Coventry First, LLC, 605 F.3d at 870 ("A proposed amendment may be denied for futility 'when the complaint as amended would still be properly dismissed.'" (quoting Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007))).

Here, Plaintiff's proposed new claim against Nurse Wilkes is futile because, like his claim against Defendant, it would be subject to dismissal for failure to exhaust administrative remedies. As discussed above, the affidavit of Keith Morris and Plaintiff's grievance history show that Plaintiff has only filed two grievances, neither of which pertain to his medical treatment or mention Defendant or Nurse Wilkes. (See supra Part II.A.2; Morris Aff. ¶¶ 22-23 & Attach. D.) Based on this evidence, the Court concludes that Plaintiff has not satisfied § 1997e(a)'s exhaustion requirement with respect to his proposed claim against Nurse Wilkes, meaning that such claim would be subject to dismissal. Therefore, Plaintiff's proposed amendment is futile, see Coventry First, LLC, 605 F.3d at 870, and his motion to amend should be **DENIED**. (Doc. no. 13.)

Because Plaintiff's only existing claim should be dismissed for failure to exhaust administrative remedies and his motion to amend should be denied, this case should be **DISMISSED** without prejudice and **CLOSED**.

### III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** (doc. no. 16), that Defendant's motion to stay be **DEEMED MOOT** (doc. no. 17), and that Plaintiff's motion to amend be **DENIED** (doc. no. 13). The Court further **RECOMMENDS** that this case be **DISMISSED** without prejudice and **CLOSED**.

SO REPORTED and RECOMMENDED this 10th day of January, 2012, at Augusta, Georgia.

*[signature]*
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE